Stacey K. Sutton
New Jersey Bar No. 027361999
James B. Baldinger
Florida Bar No. 869899
*To be admitted pro hac vice*
CARLTON FIELDS JORDEN BURT, P.A.
CityPlace Tower
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Tel: 561-659-7070
Fax: 561-659-7368
Email:       ssutton@carltonfields.com
               jbaldinger@carltonfields.com

[Additional counsel listed on signature page]
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------x

METROPCS, a brand of T-MOBILE USA,
Inc., a Delaware Corporation

      Plaintiff,

v.

PLANET MOBILE, LLC, individually and
d/b/a CELLULAR DEALS NOW, and SAJID
MAHMOOD, individually and d/b/a
CELLULAR DEALS NOW,

      Defendants.

-----------------------------------------------------x

**CASE NO.: 2:17-CV-380**

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff T-Mobile USA, Inc., a Delaware corporation ("T-Mobile"), for itself and its

MetroPCS brand (collectively referred to herein as "MetroPCS"), with its principal place of

business at 12920 S.E. 38th Street, Bellevue, Washington 98006, hereby files this Complaint for

Damages and Injunctive Relief against Defendants, PLANET MOBILE, LLC d/b/a CELLULAR

DEALS NOW, with its principal place of business at 485 College Drive, Edison, New Jersey

1

08817 ("Planet Mobile") and SAJID MAHMOOD, individually and d/b/a CELLULAR DEALS NOW, located at 485 College Drive, Edison, New Jersey 08817 ("Mahmood") (collectively, "Defendants") and states:

## INTRODUCTION

1.     T-Mobile sells wireless handsets under the brand MetroPCS ("MetroPCS Handsets" or "Handsets") for use with MetroPCS service on the T-Mobile wireless network. These MetroPCS Handsets are provided to MetroPCS dealers and customers at prices significantly below the wholesale cost so that the Handsets are more widely accessible to consumers.  Defendants and their co-conspirators are perpetrators of an unlawful scheme (the "Handset Theft and Trafficking Scheme" or the "Scheme") to profit, at Plaintiff's expense, from the illegal acquisition and resale of new MetroPCS Handsets by stealing the substantial financial investments that Plaintiff makes in the Handsets.

2.     Defendants and their co-conspirators acquire new MetroPCS Handsets through various methods, including the use of "runners" and/or "mules."[1]  As part of their Scheme, the new Handsets, which may be purchased and sold multiple times before they are ever used, ultimately end up in the hands of someone other than a MetroPCS customer.  Along the way, the Handsets are "unlocked" so they will operate on other wireless networks.  Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not underwrite the cost of new phones.

3.     Defendants' Scheme takes advantage of the fact that while Plaintiff substantially invests in the Handsets to reduce the costs for legitimate MetroPCS consumers, other wireless

---

[1] A "Runner" is an individual or entity that makes multiple purchases of new MetroPCS Handsets on behalf of phone traffickers like Defendant.  A "Mule" is an individual or entity that signs up for wireless service with MetroPCS – never intending to comply with the terms and conditions – to obtain new subsidized MetroPCS Handsets for resale by phone traffickers like Defendants.

service providers here or abroad do not.  By obtaining the MetroPCS Handsets through theft or fraud and diverting them to other markets where cell phones are not subsidized, the Scheme converts Plaintiff's investment dollars into profits for Defendants and their co-conspirators. Each of Defendants' acts, individually as well as together, is a violation of Plaintiff's rights and causes significant damage.  Additionally, as participants in the conspiracy, Defendant is liable for the harm caused to Plaintiff by the entire Scheme.

4.     The Scheme causes tremendous harm to MetroPCS and to consumers.  In addition to the pecuniary losses caused by Defendants' theft of Plaintiff's investment in MetroPCS Handsets, falsely paid commissions, lost sales and market expenses, and lost expected customer revenue, Defendants' misconduct harms MetroPCS's relationships with its customers, dealers, and others, as detailed more fully below.  Defendants' Scheme also involves unlawfully accessing Plaintiff's protected computer systems and wireless network; trafficking of Plaintiff's protected and confidential computer passwords; and willful infringement of the MetroPCS trademarks.  Defendants have caused substantial damage to MetroPCS's brand, image, and reputation.

5.     Plaintiff seeks to recover damages for the harm caused by Defendants' Handset Theft and Trafficking Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

6.     All conditions precedent to filing this action have been performed, waived or excused.

7.     Plaintiff has retained the undersigned attorneys to represent it in this action and has agreed to pay those attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

8.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.      T-Mobile is a Delaware corporation, with its principal place of business in Bellevue, Washington.

10.     MetroPCS was acquired by T-Mobile USA, Inc. in 2013 and is an exclusive T-Mobile brand.

11.     Defendant Sajid Mahmood, individually and d/b/a Cellular Deals Now, is an individual and a resident of New Jersey, and upon information and belief is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Mahmood resides on College Drive in Edison, New Jersey.

12.     Defendant Planet Mobile, LLC, individually and d/b/a Cellular Deals Now, is a New Jersey Limited Liability Company with the same address as Defendant Mahmood located on College Drive in Edison, New Jersey.  Upon information and belief, Mahmood owns and operates Planet Mobile, which is engaged in, and helps to facilitate the improper conduct described herein.

13.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Plaintiff's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

108724581.3

14.     Defendants are subject to the personal jurisdiction of this Court because they are residents of the State of New Jersey, and conducted, engaged in and carried out business ventures within the State of New Jersey, committed tortious acts within the State of New Jersey, and have engaged in substantial and not isolated activity within the State of New Jersey.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**PLAINTIFF'S BUSINESS MODEL**

16.     T-Mobile, which is based in Bellevue, Washington, is a well-established telecommunications leader in product and service innovation. T-Mobile has invested heavily in developing and maintaining its reputation and the reputation of its brands, including MetroPCS. It prides itself on its advanced nationwide 4G LTE network and low cost options provided for its customers. T-Mobile USA, Inc. provides services through its subsidiaries and operates its flagship brands, T-Mobile and MetroPCS. It currently serves approximately 57 million wireless customers and provides products and services through approximately 70,000 total points of distribution.

17.     MetroPCS, acquired by T-Mobile on May 1, 2013, has been in the forefront of telecommunications for decades by offering customers reduced-cost handsets and flat-rate wireless service plans.  MetroPCS prides itself on the value and variety of device choices from leading brands provided to its customers. The cornerstone of MetroPCS's business model is providing customers with affordable, reliable wireless products and services to match their needs and lifestyles.  A flagship brand operated by T-Mobile, MetroPCS products and services are available online and across the United States through a network of company-owned stores, and authorized dealer locations, with whom MetroPCS has contractual relationships.

108724581.3

18.     T-Mobile and MetroPCS are widely-recognized leaders in prepaid wireless service and highly value the outstanding business reputation they have worked hard to develop. MetroPCS has been recognized as a J.D. Power Customer Champion  for delivering service excellence after being evaluated across five categories including its people, presentation, process, product and price and T-Mobile again achieved the highest ranking in customer service in J.D. Power's 2015 Wireless Customer Care Full-Service Study for the 13th time.

19.     MetroPCS's wireless program enables MetroPCS customers to choose from several flat-fee monthly voice and data plans for use with cutting edge devices on the T-Mobile wireless network.  For the benefit of its customers, MetroPCS offers budget-friendly Handsets, including the latest smartphones, for little or no upfront cost, no annual service contract, no overages, and no hidden device costs.

20.     MetroPCS's business model is based upon the ability to deliver affordable, innovative, and desirable products and services to cost-conscious consumers.  Therefore, Plaintiff assists customers in their purchase of MetroPCS Handsets for use on its network by selling the Handsets for less than what Plaintiff pays to the manufacturers for the Handsets.  Plaintiff recoups the money it loses on the Handsets and in dealer commissions through revenue earned on the sale of MetroPCS service, which customers must use to transmit and receive voice, text, and data on the MetroPCS Handsets.  In addition to subsidizing Handsets, MetroPCS provides discounts, rebates, and other incentive programs by which Plaintiff heavily invests in the Handsets to the ultimate benefit of legitimate MetroPCS customers.  This investment is worth making if the customers pay for service on the MetroPCS network in accordance with the governing Terms and Conditions. MetroPCS is neither a manufacturer nor a wholesale distributor of Handsets.  If MetroPCS was in the business of selling Handsets and not a telecommunications service provider, it could not offer

consumers these significantly lower purchase prices and stay in business.  Further, these types of substantial subsidies and investment programs are not offered by telecommunications carriers outside the United States; instead, foreign consumers pay full price for the phones from the manufacturers.  Handset traffickers profit from the difference between the full value of the Handset and the subsidized price offered by MetroPCS.

21.     MetroPCS Handsets are sold subject to terms and conditions ("Terms and Conditions") which restrict and limit the commercial resale and use of the Handsets.  A copy of the Terms and Conditions is attached hereto as **Exhibit A**.  The packaging of MetroPCS Handset provides that by purchasing or opening the package, activating, using, or paying for MetroPCS service, the purchaser agrees to the MetroPCS Terms and Conditions posted on www.metropcs.com.  Purchasers have the option to return the MetroPCS Handset in accordance with the return policy if they do not agree to the Terms and Conditions.  The Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between MetroPCS and each of its customers.

22.     MetroPCS is able to offer its Handsets to customers at reduced prices only if the Handsets are used as intended with MetroPCS service.  Manufacturers that produce wireless phones for MetroPCS install proprietary software, requested and paid for by Plaintiff, on the MetroPCS Handsets.  Among other things, this software is intended to prevent the Handsets from being used for other than MetroPCS service, except under circumstance in which legitimate customers meet the criteria to have the Handset unlocked.

23.     Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive.  MetroPCS expends substantial resources to maintain its position as an industry leader and to ensure that its products and services are at the cutting edge

of the latest technological developments.  Providing its cost-conscious customers with quality and advanced technology at an affordable price is a key differentiator for MetroPCS and central to its business strategy.

24.     Plaintiff invests heavily in efforts to provide MetroPCS customers with the most up-to-date wireless handsets, and shoulders most or all of the cost of purchasing a new phone for those customers.  MetroPCS makes phones available to new customers at a low cost when they initiate wireless service, and also to existing customers at regular intervals.

25.     As the demand, and therefore the price, for smartphones in various world markets skyrockets, the subsidized MetroPCS smartphones are a particularly attractive and lucrative target for participants in the Handset Theft and Trafficking Scheme.

<strong>METROPCS TRADEMARK RIGHTS</strong>

26.     T-Mobile owns federal trademark registrations for the standard character and stylized MetroPCS® mark (collectively, the "MetroPCS Marks").  Copies of the certificates of registration issued by the United States Patent and Trademark Office ("USPTO") are attached hereto as **Composite Exhibit B**.[2]  The stylized MetroPCS Marks are depicted below:



27.     Plaintiff uses the MetroPCS Marks on and in connection with telecommunications products and services.

28.     The MetroPCS Marks have become an intrinsic and essential part of the valuable goodwill and property of Plaintiff, who protects the MetroPCS Marks.  The MetroPCS Marks are

---

[2] On or around November 3, 2006, MetroPCS, Inc. assigned all of its MetroPCS Marks to MetroPCS Wireless, Inc. as part of a merger agreement.  The assignment was recorded with the USPTO on April 3, 2007. On or around May 1, 2013 MetroPCS Wireless, Inc. assigned all of its MetroPCS Marks to T-Mobile USA, Inc. as part of a merger agreement.  The assignment was recorded with the USPTO on May 2, 2013.

well-established and well-known to customers and the trade as a symbol identifying and distinguishing MetroPCS products and services, and signifying distinctive products and services of high quality.  Only Plaintiff and its expressly authorized, affiliated agents are permitted to use the MetroPCS Marks.  The MetroPCS Marks are valid, distinctive, protectable, have acquired secondary meaning, and are associated exclusively with Plaintiff and MetroPCS.

## DEFENDANTS' MISCONDUCT

29.     MetroPCS has discovered that, although large quantities of its Handsets are being acquired throughout the United States, a significant number of these Handsets are not being used in connection with its services.  Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using MetroPCS services, are fraudulently acquiring and reselling MetroPCS Handsets in bulk quantities.  The Handsets are acquired, either directly by Defendants or through their co-conspirators, and then sold for a substantial profit and shipped directly overseas or shipped to other domestic traffickers who add them to larger shipments headed overseas, to be used on foreign carriers' networks.  Before being shipped overseas, the Handsets are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed.  The Handsets are often wrongfully unlocked by Defendants or their co-conspirators, to raise their value and prepare them for use on foreign carriers.  Those new MetroPCS Handsets acquired through theft or fraud that are not shipped overseas are often sold in bulk domestically for inclusion in larger overseas shipments or for  the warranty market.  Defendant undertakes these actions for his own profit.

30.     Once a MetroPCS Handset is unlocked and shipped overseas or resold domestically to be used on other wireless networks, Plaintiff no longer has a revenue source to recoup its investment in that Handset.

31.     If MetroPCS identifies a Handset as connected with theft, fraud, or other loss, the International Mobile Station Equipment Identity ("IMEI") is logged into MetroPCS's system and the Handset can no longer be activated or used on the MetroPCS network unless or until that designation is changed by MetroPCS.  This is done in an attempt to deter criminal activity.  The Handset is thereafter referred to in the handset trafficking community as having a "Bad IMEI." As it is no longer a functioning MetroPCS Phone, the only value of a Bad IMEI Handset is in unlocking the handset for use on other domestic networks and for overseas resale.

32.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells MetroPCS Handsets.  Defendants have acquired and sold large quantities of MetroPCS Handsets through various co-conspirators.  While the complete extent of Defendants' activities in the Handset Theft and Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

33.     Defendants are not authorized MetroPCS dealers.  Defendants have no legitimate connection to MetroPCS.

34.     Defendants traffic illicitly-obtained new MetroPCS Handsets in bulk for resale. MetroPCS became aware of Defendants' illegal activities in July 2015, through an email advertisement offering brand new MetroPCS Nokia Lumia 521 handsets for sale.  The email was sent by the company "Mobile Hype."

35.     On July 30, 2015, an undercover investigator contacted the telephone number in the e-mail and arranged to purchase Nokia Lumia 521 Handsets in person at the Mobile Hype office, located in Edison, New Jersey.  On July 31, 2015, the investigator met with Mahmood at the Mobile Hype office.  Mahmood stated that he was a sales representative for Mobile Hype. Mahmood informed the investigator that Mobile Hype deals in new T-Mobile Handsets, and also

10

buys and sells MetroPCS Handsets.  The investigator observed a number of Handsets at the location, which all appeared to be brand new.

36.     On or about November 9, 2015, the investigator spoke with Mahmood via telephone about purchasing new MetroPCS Handsets the investigator had for sale.  On that same day, the investigator met with Mahmood at the Mobile Hype office to provide him with 10 new MetroPCS LG L70 Handsets.  Mahmood told the investigator that he could not process payment for the Handsets without an invoice.  The investigator agreed to leave the Handsets with Mahmood and send the invoice via e-mail, and Mahmood agreed to wire the funds for the purchase price upon receipt of the invoice.  During the meeting, Mahmood also expressed his interest in purchasing additional new MetroPCS Handsets from the investigator.  He admitted that he resells new Handsets domestically and, when he has overseas clients, exports Handsets for sale internationally.  Upon information and belief, Defendants sell the illicitly-obtained new Handsets, and related products, including unlock codes, through various outlets, including the website http://cellulardealsnow.com.  The "Contact Us" portion of the website includes Mahmood's address on College Drive in Edison, New Jersey and Mahmood's telephone number. Copies of sample screen-prints from the website are attached hereto as **Composite Exhibit C.**

37.     On November 10, 2015 the investigator sent an invoice to Mahmood's email address as agreed, and also provided bank account information for Defendants to make payment for the 10 new MetroPCS Handsets.  On November 12, 2015, Mahmood sent a text message to the investigator stating he needed to call him to discuss the Handsets that he bought.   Copies of the text messages referenced herein are attached hereto as **Composite Exhibit D**.

38.     Mahmood called the investigator later that day, claiming that his boss at Mobile Hype instructed him to return the 10 MetroPCS Handsets because his boss was not comfortable

buying handsets from a small company with whom he was unfamiliar. However, Mahmood told the investigator that he was personally interested, along with an unidentified partner in New Jersey, in the new MetroPCS Handsets. Mahmood and the investigator agreed to meet in person on November 14, 2015 so that Mahmood could give him cash for the purchase of the 10 MetroPCS Handsets and the investigator could meet Mahmood's unidentified partner.

39.    On  November 14, 2015, the investigator met with Mahmood at a public place in Newark, New Jersey. Copies of two date and time-stamped pictures of Mahmood taken by the investigator's cell phone are included with the copies of the text messages attached as Composite Exhibit D. During the meeting, Mahmood paid cash to the investigator for the 10 new MetroPCS Handsets. Mahmood said that his partner was not able to meet with them that day as originally planned.

40.    On November 24, 2015, the investigator received a text message from Mahmood, who was seeking to purchase new T-Mobile T139 Handsets. The investigator said he only had 50 T139 Handsets. Mahmood confirmed he would purchase that quantity and instructed the investigator to invoice the company, "Planet Mobile" on College Drive in Edison, NJ, stating "[t]hat's my company."

41.    The investigator and Mahmood exchanged several text messages after November 24, 2015 and eventually set a meeting for December 3 for Mahmood to purchase the 50 T-Mobile Samsung T139 Handsets. On December 3, 2015, the investigator told Mahmood via text message that he was able to obtain 100 new T139 Handsets (instead of 50), and Mahmood confirmed that he wanted to purchase that quantity. Mahmood also inquired about the investigator's ability to obtain MetroPCS Handsets. The investigator told him that he could obtain 10 new MetroPCS LG L70 Handsets, which Mahmood confirmed he also wanted to

purchase.   On that same day, Mahmood met with the investigator in Philadelphia, PA, to purchase 100 new T-Mobile Samsung T-139 phones and 10 new MetroPCS LG L70 Handsets. Defendants paid the agreed upon purchase price in cash.

42.    On January 18, 2016, the investigator received a text message from Mahmood stating that Defendants had a buyer for 50 new MetroPCS LG L70 Handsets.  The investigator asked Mahmood if he was going to unlock the Handsets upon purchase.  Mahmood replied that his buyer would take care of the unlocking himself.  Mahmood followed up with the investigators on January 20, 2016 via text message, reiterating his need for the 50 MetroPCS LG L70 Handsets for his buyer. On February 4, 2016, Mahmood again emphasized his interest in obtaining more Handsets, claiming he could "move them."

43.     On February 12, 2016, Mahmood posted an advertisement via "Whatsapp" advertising MetroPCS LG Optimus L70 Handsets for sale with unlock codes.  Upon information and belief, Mahmood acquired the Handsets from another source when the investigator did not sell him the 50 LG L70 Handsets he was soliciting.

44.    On February 16, 2016, the investigator contacted Defendants via text message to inquire about the new Handsets he was offering for sale, but Mahmood stated that they were already sold.  However, Mahmood confirmed in the same text message conversation that he could obtain 500 MetroPCS LG L70 Handsets with unlock codes, sealed in blister packaging, in one day.  Defendants sent a picture of one of the Handsets to the investigator in a text message to confirm that they were readily available from Defendants' supplier.  Mahmood further advised that his supplier had 1,000 new MetroPCS Handsets on hand.  Although the investigator did not purchase the Handsets, upon information and belief, consistent with their practices, Defendants found another purchaser for the Handsets.

108724581.3

45.     Upon information and belief, all 1,070 new MetroPCS Handsets which Defendants sought to obtain or sell, were ultimately obtained and trafficked as part of Defendants' Handset Trafficking Scheme.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

46.     Defendants' actions substantially harm Plaintiff in several ways, including *inter alia*: (1) Plaintiff is deprived of the opportunity to recoup its substantial investment in MetroPCS Handsets; (2) Plaintiff is deprived of the opportunity to earn profits by providing wireless service to legitimate MetroPCS consumers; (3) Defendants' actions seriously and irreparably interfere with Plaintiff's relationships with its customers and dealers; and (4) Defendants' infringement of the MetroPCS name and Marks causes significant ongoing and irreparable losses and harm to MetroPCS's brand, image, and reputation.  All of these factors undermine Plaintiff's competitive edge in the wireless industry.

47.     On information and belief, the conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful acquisition and resale of large quantities of new MetroPCS Handsets has also resulted in shortages of available MetroPCS Handsets, particularly the most in-demand models.  This misconduct substantially harms Plaintiff and its relationship with dealers and consumers because Plaintiff is not able to supply sufficient MetroPCS Handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.

48.     Plaintiff suffers additional, irreparable harm when the MetroPCS Handsets are removed from the original packaging and altered because Plaintiff is deprived of the means to control the quality of its product.  This becomes especially damaging where a potential legitimate MetroPCS customer within the United States acquires a Handset from Defendants that the customer believes is a

genuine MetroPCS Handset, with all of the attendant benefits and is later disappointed in MetroPCS because the Handset does not work as intended on the network because it has been denominated a Bad IMEI Handset or otherwise.  Furthermore, the process of unlocking and reselling a MetroPCS Handset voids the manufacturer's warranty on the device.  The unlocked repackaged MetroPCS Handsets are then resold without the original manufacturer's warranty documentation.  Both consumers and Plaintiff are harmed when a MetroPCS Handset that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Consumers who purchase MetroPCS Handsets from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Handsets.  As a result, the MetroPCS reputation suffers.

49.     MetroPCS's reputation is further damaged by its inability to assist those consumers who buy MetroPCS Handsets from Defendants, because despite bearing the MetroPCS Mark, they are no longer valid MetroPCS Handsets because the actions of Defendants and their co-conspirators voided the warranties and/or as identified Bad IMEI phones, they cannot be activated on MetroPCS service.

50.     Defendants' conduct has resulted in substantial harm to Plaintiff's business reputation and goodwill; a greater likelihood of confusion, mistake, and deception as to the source of origin of MetroPCS products unlawfully sold by the Defendants and confusion as to what if any relationship exists between Plaintiff and Defendants.

**CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS**

51.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

52.     In addition to MetroPCS and T-Mobile USA, Inc., Sprint Solutions, Inc. and Sprint Communications Company L.P. ("Sprint), TracFone Wireless, Inc., Nokia Corporation, and AT&T Mobility LLC have all filed lawsuits in numerous federal courts across the country against handset traffickers engaged in the practice of defrauding legitimate consumers and the telecommunications companies by acquiring large quantities of wireless telephones and reselling them for profit.   Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions.   Copies of several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit E**.   A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison.   Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit F**.

**CRIMINAL INVESTIGATION AND
PROSECUTION OF PHONE TRAFFICKING**

53.     Handset traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country.   Some recent examples are:

    a.     In August 2014, the United States Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of Smartphones to the black markets of the Middle

East and China.  A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been using runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b.      In March 2013, the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

c.      On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen wireless phones.

d.      On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea.  On October 16, 2014, Mr. Floarea, pled guilty to Interstate Transportation of Stolen Property and on April 16, 2015, Floarea was sentenced to twelve (12) months and one day in federal prison.

e.      An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

108724581.3

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit G.**

## COUNT ONE

### UNFAIR COMPETITION

54.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

55.     Defendants' conduct in acquiring and/or inducing others to acquire the Handsets, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Handsets, and reselling and/or assisting others to resell the Handsets as new for activation on other wireless networks constitutes unfair competition under the common law of the State of New Jersey.

56.     Defendants' conduct in selling, inducing others to sell, and/or assisting others to sell unlocked MetroPCS Handsets undermines Plaintiff's incentive programs, illegally appropriates Plaintiff's investment in the Handsets, and constitutes unfair competition under the common law of the State of New Jersey.

57.     Defendants' use of at least one of the MetroPCS Marks in connection with the sale of unlocked, materially-different MetroPCS Handsets has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products and services, and the relationship between MetroPCS and Defendants.  Thus, Defendants have also engaged in unfair competition with MetroPCS in violation of the common law of the State of New Jersey by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by

MetroPCS and are thereby misappropriating the benefits of substantial effort and money expended by Plaintiff in establishing its rights in and to the MetroPCS Marks.

58.     Defendants' actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Plaintiff.

59.     Plaintiff is entitled to appropriate relief, including injunctive relief.

## COUNT TWO

### TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE

60.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

61.     A business relationship, and an expectancy of business relationships, exists between Plaintiff and authorized dealers of MetroPCS Handsets.

62.     A business relationship, and an expectancy of business relationships, exists between Plaintiff and current and prospective MetroPCS customers.

63.     There is a high probability of future economic benefit to Plaintiff as a result of these current and prospective business relationships.

64.     Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or has knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between Plaintiff and authorized dealers who sell MetroPCS products, and legitimate MetroPCS customers or prospective customers.

65.     Specifically, but without limitation, Defendants knew that Plaintiff has business relationships, and an expectancy of business relationships, with legitimate consumers of MetroPCS Handsets and wireless service.  Defendants interfered with these relationships by engaging in the Handset Theft and Trafficking Scheme and causing, at least in part, Plaintiff to

have an insufficient supply of MetroPCS Handsets available to meet legitimate consumer demand.

66.     Defendants also knew that Plaintiff has business relationships with authorized dealers of MetroPCS Handsets to provide said dealers with sufficient quantities of MetroPCS Handsets for their legitimate consumers' use exclusively on MetroPCS's wireless network. Defendants' Scheme has resulted in significant numbers of new MetroPCS Handsets that are diverted from service on MetroPCS, causing Handset shortages, and thereby harming MetroPCS's relationship with its authorized dealers.

67.     Defendants also knew that Plaintiff has business relationships with legitimate MetroPCS customers to provide them with Handsets and MetroPCS service.

68.     Defendants are intentionally interfering with Plaintiff's business relationships and prospective advantages through improper means and in violation of the law.

69.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of his conduct.

70.     As set forth fully below, Defendants' intentional interference was committed through the use of fraud and fraudulent misrepresentations to Defendants' direct benefit and to the detriment of Plaintiff.

71.     Defendants' acts injured Plaintiff's business relationships.

72.     Plaintiff has been proximately damaged and continues to be damaged as a result of Defendants' interference.

73.     There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' tortious interference.

## COUNT THREE

### CONSPIRACY TO COMMIT FRAUD
### AND FRAUDULENT MISREPRESENTATION

74.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above and Paragraphs 93 through 108 below as though fully set forth herein.

75.     An agreement and conspiracy existed and continues to exist between and among the Defendants and their co-conspirators to unlawfully acquire in bulk, traffic, and resell unlawfully unlocked and altered MetroPCS Handsets under at least one of the MetroPCS Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

76.     Defendants knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

77.     Plaintiff has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

78.     There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' conspiracy.

## COUNT FOUR

### UNJUST ENRICHMENT

79.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

80.     By bulk acquisition of MetroPCS Handsets at less than the manufacturer cost of the Handsets with no intention of using the Handsets on MetroPCS service in accordance with

21

108724581.3

the Terms and Conditions, and resale of MetroPCS Handsets for profit, Defendants has obtained benefits from Plaintiff that have caused significant harm to Plaintiff and a significant financial gain to Defendants.

81.     Defendants have acquired the benefits voluntarily and with full knowledge of the benefits.

82.     Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Plaintiff the value of the benefits Defendants acquired.

83.     There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' unjust enrichment.

<u>**COUNT FIVE**</u>

**COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION**

84.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

85.     As part of the Handset Theft and Trafficking Scheme, Defendants, directly or indirectly through co-conspirators, regularly and systematically misrepresent to Plaintiff that the MetroPCS Handsets are being acquired for a legitimate purpose, that the Handsets will be used by Defendants or other legitimate consumers with MetroPCS service, and that he will perform in accordance with the Terms and Conditions.

86.     On information and belief, Defendants defrauded Plaintiff, and its legitimate customers and dealers, to acquire MetroPCS products to be unlocked, resold, and ultimately shipped overseas for activation on foreign carrier networks.

87.     When Defendants, directly or through their co-conspirators, acquire MetroPCS Handsets as part of the Scheme, they do not intend to use the Handsets for a legitimate purpose

or maintain them as active on MetroPCS service or otherwise perform in accordance with the Terms and Conditions.

88.    Defendants and their co-conspirators know that they are required to use the MetroPCS Handsets on Plaintiff's network, pay the monthly service charge, and otherwise comply with the Terms and Conditions.

89.    Defendants intended for Plaintiff to rely on his misrepresentations, and/or the misrepresentations of his co-conspirators, to allow Defendants to acquire and unlock the Handsets for improper purposes.

90.    Plaintiff's reliance on the misrepresentations of Defendants and their co-conspirators was reasonable under the circumstances.

91.    Plaintiff has been damaged and continues to suffer damages as a result of Defendants' actions.

92.    There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' fraud.

## COUNT SIX

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

93.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

94.    The MetroPCS Handsets that are trafficked by Defendant are loaded with confidential codes/passwords that access: (a) Plaintiff's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Plaintiff's computer billing network (collectively, "Plaintiff's protected computer networks").  As such, the Handsets act as a gateway to Plaintiff's protected computer networks.  Plaintiff restricts access to

108724581.3

these protected computer networks through, among other things, the confidential codes/passwords contained in the Handsets and the confidential codes/passwords ("security codes").

95.     Through his Scheme, Defendant is knowingly trafficking in the security codes contained in the Handsets with the intent to defraud Plaintiff.

96.     Upon information and belief, once Defendant unlawfully acquires the MetroPCS Handsets, he uses fraudulently-obtained confidential codes/passwords to gain additional access to Plaintiff's protected computer networks.   This additional access into Plaintiff's protected computer networks is not authorized in any way.   Upon information and belief, Defendant shares these confidential codes/passwords with his co-conspirators.

97.     Upon information and belief, Defendant unlawfully accesses Plaintiff's protected computer networks using fraudulently-obtained confidential codes/passwords to: (1) perform various tests to confirm that the Handset he is purchasing is, in fact, active MetroPCS Handsets; and/or (2) unlock the MetroPCS Handset, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in MetroPCS Handsets and make unauthorized changes in Plaintiff's protected computer networks so the MetroPCS Handset will operate on other networks.

98.     Through the Handset Theft and Trafficking Scheme, Defendant is knowingly trafficking in the confidential codes/passwords contained in the Handsets with the intent to defraud and harm Plaintiff.

99.     Defendants' transfer of the Handsets and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes/passwords were

transferred, or otherwise disposed of, to others, or Defendant obtained control of the codes/passwords with intent to transfer or dispose of them.

100.    Defendants' trafficking of the Handsets substantially affects interstate commerce and communication in that the codes/passwords contained in the Handsets are trafficked over the internet, throughout the United States, and around the world, and Plaintiff's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communication services pursuant to licenses issued by the Federal Communications Commission.

101.    Defendants' trafficking of illicitly-acquired codes/passwords that access Plaintiff's protected computer networks has caused and will continue to cause Plaintiff to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

102.    With respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period assessing its hacked protected computer networks for damage and taking steps to prevent future unauthorized access by Defendant and/or his co-conspirators.

103.    Also with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period investigating Defendants' intrusions into Plaintiff's protected computer networks, assessing the possible impairment to the integrity of its protected computer networks, and conducting damage assessment regarding Defendants' collection and dissemination of MetroPCS Handsets and security codes, as well as tracking down fraudulently sold Handsets.

104.    Moreover, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants access Plaintiff's protected computer networks without authorization.

108724581.3

105.    With respect to damage, by infiltrating Plaintiff's computer and telecommunications network and collecting and disseminating the fraudulently obtained Handsets and codes/passwords, Defendants have substantially impaired the integrity of Plaintiff's protected computer networks in an amount in excess of $5,000.    Moreover, Defendants' actions have deprived Plaintiff of the means to control the quality of its products and services.

106.    Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

107.    Defendants' conduct is intentional, malicious and willful.

108.    Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiff and its MetroPCS customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT SEVEN

### UNAUTHORIZED ACCESS
### 18 U.S.C. § 1030(a)(5)(C)

109.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

110.    The MetroPCS Handsets that are trafficked by Defendant and his co-conspirators are loaded with confidential codes/passwords that access: (a) Plaintiff's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Plaintiff's computer billing network (collectively, "Plaintiff's protected computer

108724581.3

networks"). As such, the Handsets act as a gateway to Plaintiff's protected computer networks. Plaintiff restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Handsets and the confidential codes/passwords ("security codes").

111.     In general, MetroPCS Handsets are connected to and activated on Plaintiff's protected computer networks when purchased from MetroPCS.

112.     Plaintiff's proprietary computer system holds confidential information, is connected to the internet, and assists in providing federally-regulated telecommunications services. Plaintiff's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

113.     In furtherance of his Handset Theft and Trafficking Scheme, Defendant and/or his co-conspirators use fraud and misrepresentation to acquire MetroPCS Handsets, and in so doing void any purchase agreement and any legitimate access to Plaintiff's computer networks. As such, Defendants' access to the Handsets and into Plaintiff's protected computer networks is not authorized in any way.

114.     Upon information and belief, once Defendant unlawfully acquires the MetroPCS Handsets, he uses fraudulently-obtained confidential codes/passwords to gain additional access to Plaintiff's protected computer networks. This additional access into Plaintiff's protected computer networks is not authorized in any way.

115.     Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking MetroPCS Handsets by misrepresenting to Plaintiff, either directly or through one of his co-conspirators, that the Handsets are being acquired and unlocked for a

legitimate purpose for use by legitimate consumers with MetroPCS service, when, in fact, they are not.

116.    Defendants knowingly and with the intent to defraud, causes Plaintiff to access its proprietary computer systems.  Defendants are not authorized to do so.

117.    Further, by illicitly acquiring and unlocking the Handsets, Defendants necessarily accesses Plaintiff's protected computer networks because the Handsets are connected to those networks when acquired from MetroPCS.

118.    Defendants use fraud and misrepresentation to acquire the Handsets from MetroPCS, and, as such, Defendants' access of Plaintiff's protected computer networks is not authorized in any way.

119.    Upon information and belief, when Defendants acquire a MetroPCS Handset from Runners/Mules acting on their behalf; Defendants carefully examine the Handset to confirm it is an active MetroPCS Handset and that the various electronic code numbers and access numbers loaded on the Handset are correct.  This too constitutes unauthorized access of Plaintiff's protected computer networks via a password, contained in the Handset, obtained through fraud and misrepresentation.

120.    By trafficking in activated MetroPCS Handsets, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Plaintiff's protected computer networks.

121.    Defendants' illegal and unauthorized access of Plaintiff's protected computer systems allows him to improperly steal Plaintiff's investment in MetroPCS Handsets.

122.    Defendants' activities substantially affect interstate commerce and communication in that the Handsets are trafficked over the internet, throughout the United States

28

and around the world, and Plaintiff's computer system and telecommunications network are used in and affect interstate commerce and communication, as well as provide wireless communication services pursuant to licenses issued by the Federal Communications Commission.

123.    Defendants' unauthorized access of Plaintiff's protected computer systems has caused and will continue to cause Plaintiff to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

124.    With respect to loss, Plaintiff has lost its investments in the illegally-acquired MetroPCS Handsets and security codes and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking remedial action to counteract Defendants' intrusions, conducting a damage assessment regarding Defendants' collection and dissemination of MetroPCS Handsets, and tracking down fraudulently sold Handsets.

125.    Moreover, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants accessed Plaintiff's protected computer networks without authorization.

126.    With respect to damage, by infiltrating Plaintiff's computer systems and collecting and disseminating the illegally-trafficked Handsets and security codes, Defendants have substantially impaired the integrity of Plaintiff's systems in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Plaintiff of the means to control the quality of its products and services, and have stolen Plaintiff's financial investment in MetroPCS Handsets.

127.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

108724581.3

128.     Defendants' conduct is intentional, malicious and willful.

129.     Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiff and its MetroPCS customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT EIGHT

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

130.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

131.     The MetroPCS Handsets that are acquired by Defendants, directly and/or from his co-conspirators, in furtherance of the Handset Theft and Trafficking Scheme, are loaded with codes/passwords that access: (a) Plaintiff's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Plaintiff's computer billing network (collectively, "Plaintiff's protected computer networks").   In addition, manufacturers that produce MetroPCS wireless phones for Plaintiff install proprietary and confidential software, ordered and paid for by Plaintiff, on the MetroPCS Handsets to lock the Handsets to Plaintiff's protected computer networks and prevent the Handsets from being used other than with MetroPCS service.

132.     In general, MetroPCS Handsets are connected to and activated on Plaintiff's protected computer networks when purchased from MetroPCS.

133.     In furtherance of their Handset Theft and Trafficking Scheme, Defendants and/or their co-conspirators use fraud and misrepresentation to acquire MetroPCS Handsets, including

108724581.3

the most in-demand smartphones, and in so doing void any purchase agreement and any legitimate access to Plaintiff's computer networks.  As such, Defendants' access to the Handsets and into Plaintiff's protected computer networks is not authorized in any way.

134.     Upon information and belief, once Defendants unlawfully acquire the MetroPCS Handsets, they or their co-conspirators use fraudulently-obtained confidential codes/passwords to gain additional access to Plaintiff's protected computer networks.  This additional access into Plaintiff's protected computer networks is not authorized in any way.

135.     Upon information and belief, Defendants unlawfully access Plaintiff's protected computer networks using fraudulently-obtained confidential codes/passwords to: (1) perform various tests to confirm that the Handset they are purchasing is, in fact, active MetroPCS Handsets; and/or (2) unlock the MetroPCS Handset, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in MetroPCS Handsets and make unauthorized changes in Plaintiff's protected computer networks so the MetroPCS Handset will operate on other networks.

136.     Defendants are knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Plaintiff's protected computer networks.

137.     Defendants' access of Plaintiff's protected computer systems allows them to improperly steal Plaintiff's substantial financial investment in MetroPCS Handsets.

138.     Plaintiff's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

139.     Defendants' activities substantially affect interstate commerce and communication in that, by Defendants' own admission, the Handsets are acquired and trafficked throughout the

United States and around the world, and Plaintiff's computer system and telecommunications network are used in and affect interstate commerce and communication, as well as provide wireless communication services pursuant to licenses issued by the Federal Communications Commission.

140.     Defendants' unauthorized access of Plaintiff's protected computer systems has caused and will continue to cause Plaintiff to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

141.     With respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period assessing its protected computer networks for damage and taking steps  to prevent future unauthorized access by Defendants and/or their co-conspirators.

142.     In addition, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period identifying the impairment of or damage to Plaintiff's protected computer networks that Defendants and/or their co-conspirators accessed with authorization.

143.     Further, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs associated with investigating Defendants' and/or their co-conspirators' intrusions into Plaintiff's protected computer networks and taking subsequent remedial measures.

144.     Moreover, with respect to loss, Plaintiff has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendant's accessed Plaintiff's protected computer networks without authorization.

145.     With respect to damage, by infiltrating Plaintiff's computers systems and collecting and disseminating the illegally-obtained Handsets, Defendant has substantially impaired the integrity of Plaintiff's systems in an amount in excess of $5,000.  Moreover,

Defendants' actions have deprived Plaintiff of the means to control the quality of MetroPCS products and services, and have stolen Plaintiff's financial investment in its Handsets.

146.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

147.    Defendants' conduct is intentional, fraudulent, malicious and willful.

148.    Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C. § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Plaintiff and its MetroPCS customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

## COUNT NINE

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

149.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

150.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally-registered MetroPCS Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different MetroPCS Handsets, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the MetroPCS Handset package.

151.    Defendants' and/or their co-conspirators' use of certain federally-registered MetroPCS Marks in connection with the sale of MetroPCS Handsets has caused, and will further

cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Plaintiff and Defendants.

152.   Defendants' and/or their co-conspirators' unauthorized use of certain federally-registered MetroPCS Marks in connection with his participation in the Scheme is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Plaintiff.

153.   Defendants' and/or their co-conspirators' use of certain federally-registered MetroPCS Marks in connection with the unlocked, materially-different MetroPCS Handsets, which do not include warranties, manuals, accessories and related items made part of the MetroPCS Handset package, and may have been flagged as "Bad IMEI" Handsets and not able to be activated with MetroPCS service, constitutes a misappropriation of Plaintiff's distinguishing and identifying federally-registered trademarks that were created as a result of significant effort and expense by Plaintiff and its predecessor-in-interest over a long period of time.

154.   Defendants' and/or their co-conspirators' use of certain federally-registered MetroPCS Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants has some connection, association or affiliation with Plaintiff, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiff.

155.   Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Plaintiff and the reputation and goodwill of Plaintiff, and have been unjustly enriched and will continue to unjustly enrich himself at the expense of Plaintiff.

156.    Plaintiff is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

157.    Defendants' aforesaid acts constitute willful infringement of Plaintiff's aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TEN

**FEDERAL COMMON LAW TRADEMARK INFRINGEMENT
AND FALSE ADVERTISING
15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]**

158.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

159.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of at least one of the MetroPCS Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, materially-different MetroPCS Handsets, which downstream customers will discover have been altered from their original state, are inoperable on MetroPCS service, and do not include the warranties, accessories, manuals and related items that constitute part of the MetroPCS Handset package.

160.    Defendants' and/or their co-conspirators' use of at least one of the MetroPCS Marks in connection with the sale of unlocked, materially-different MetroPCS Handsets has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' materially-different products, and the relationship between Plaintiff and Defendants.

108724581.3

161.    Defendants' and/or their co-conspirators' unauthorized use of at least one of the MetroPCS Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Plaintiff.

162.    Defendants' and/or their co-conspirators' use of at least one of the MetroPCS Marks in connection with the unlocked, materially-different MetroPCS Handsets, which do not include warranties, manuals, accessories and related items made part of the MetroPCS Handset package, and, in some cases, have been flagged as "Bad IMEI" Handsets and not able to be activated on MetroPCS service, constitutes a misappropriation of at least one of the distinguishing and identifying MetroPCS Marks that was created as a result of significant effort and expense.

163.    Defendants' and/or their co-conspirators' use of at least one of the MetroPCS Marks, evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant has some connection, association or affiliation with MetroPCS, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants'  products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by MetroPCS. Defendants are not affiliated with MetroPCS in any way.

164.    Defendants, in committing the foregoing acts in commerce, have damaged and will continue to damage Plaintiff and Plaintiff's reputation, and have been unjustly enriched and will continue to unjustly enrich himself at Plaintiff's expense.

165.    Plaintiff is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

166.     Defendants' use of at least one of the MetroPCS Marks in advertising or promotion misrepresents the nature, characteristics, and/or qualities of his infringing products.   Such advertising and promotion is false and/or misleading.   Defendants'   advertising and promotion deceives or has the capacity to deceive consumers.   The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

167.     Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

168.     Plaintiff is entitled to appropriate relief as requested herein, including preliminary and permanent injunctive relief.

169.     Defendants knew or should have known that Plaintiff is the owner of the MetroPCS Marks and that Defendants have no legal right to use any of the MetroPCS Marks on their infringing products.

170.     Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiff's lost profits, Defendants'   profits, and Plaintiff's attorneys' fees.

## COUNT ELEVEN

### CONTRIBUTORY TRADEMARK INFRINGEMENT

171.     Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

172.     By misappropriating and using at least one of the MetroPCS Marks in connection with the Handset Theft and Trafficking Scheme, Defendants knowingly aided and enabled distributors and/or sellers of his products to market them to members of the general public in a

way that infringes at least one of the MetroPCS Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

173.    Defendants' unlawful, unauthorized, and unlicensed sale of unlocked MetroPCS Handsets has contributed to the creation of express and implied misrepresentations that the MetroPCS Handsets, as sold by Defendants, were created, authorized or approved by Plaintiff, may be activated on MetroPCS service, and include warranties.

174.    Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase MetroPCS Handsets from Defendants or their co-conspirators to believe that they are purchasing legitimate MetroPCS handsets approved by Plaintiff that can be activated on MetroPCS service and contain original warranties.

175.    Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious and willful.

176.    Plaintiff has been damaged and continues to suffer damages as a result of Defendants' actions.

177.    There is no adequate remedy at law to fully compensate Plaintiff for the harm caused by Defendants' actions.

**COUNT TWELVE**

**CONVERSION**

178.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

179.    Defendants have and are engaged in acts of conversion in violation of the law of the State of Illinois.

108724581.3

180.    Plaintiff has the right to provide MetroPCS Handsets and wireless service to the public.  Defendants have no such privilege or right.

181.    Defendants knew or should have known that he obtained the Handsets through illegitimate means and had no legal right to advertise, use or resell them.

182.    Defendants are wrongfully interfering with Plaintiff's rights by engaging in the Handset Theft and Trafficking Scheme.

183.    Defendants intentionally and willfully exerted dominion and ownership over the MetroPCS Handsets.

184.    Defendants' conversion of Plaintiff's property has caused and continues to cause Plaintiff to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial.   Unless enjoined by this Court, Defendants will continue these acts, thereby causing Plaintiff further immediate and irreparable damage.

### COUNT THIRTEEN

### UNFAIR COMPETITION
### N.J. Rev. Stat. § 56:4-1

185.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

186.    Defendants have and are engaged in fraudulent acts or practices in violation of the prohibition against deceptive acts and practices found at N.J. Rev. Stat. § 56:4-1.

187.    Defendants have used and are using the MetroPCS Marks in connection with the above-described Handset Trafficking Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.

188.    The use of the MetroPCS Marks by Defendants creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among MetroPCS and Defendants.

189.    Defendants' acts have damaged, impaired, and diluted that part of MetroPCS's goodwill and good name symbolized by the MetroPCS Marks.  The nature, probable tendency, and effect of Defendants' use of these names and properties in the manner alleged are to enable Defendants to deceive the public.

190.    Defendants' use of MetroPCS's name and Marks in its Handset Trafficking Scheme constitutes unfair competition as prohibited by N.J. Rev. Stat. § 56:4-1.

191.    Defendants had actual knowledge of MetroPCS's rights at the time they used the MetroPCS Marks in connection with their Handset Trafficking Scheme.   Thus, Defendants willfully and deliberately infringed upon MetroPCS's rights.

192.    Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as MetroPCS.  These practices constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising.

193.    As a result of Defendants' acts, Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Plaintiff further immediate and irreparable damage.

108724581.3

## COUNT FOURTEEN

**NEW JERSEY COMPUTER FRAUD AND ABUSE ACT**
**N.J. Rev. Stat. § 2A:38A-1,** *et seq.*

194.    Plaintiff reasserts the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

195.    Plaintiff restricts access to its protected computer network by requiring confidential codes/passwords to access its protected computer systems.

196.    Upon information and belief, once Defendants illicitly acquire the MetroPCS Handsets, they purposefully use MetroPCS's confidential codes/passwords to gain additional access to MetroPCS's protected computer networks.  This access into MetroPCS's protected computer networks is not authorized in any way.

197.    Upon information and belief, Defendants acquire the unlocking codes/passwords and methodologies for unlocking MetroPCS Handsets by misrepresenting to MetroPCS, either directly or through a co-conspirator, that the Handsets are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on MetroPCS's protected computer networks, when in fact, they are not.

198.    Upon information and belief, Defendants purposefully access MetroPCS's protected computer networks using MetroPCS's confidential codes/passwords to: (1) perform various tests to confirm that the Handset he is purchasing is, in fact, active on MetroPCS's wireless network; and/or (2) unlock the MetroPCS Handset, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in MetroPCS Handsets and unauthorized changes to MetroPCS's protected computer networks, so that the MetroPCS Handset will operate on other wireless networks.  This access into MetroPCS's protected computer networks is not authorized in any way.

108724581.3

199.    Defendants' purposeful and unauthorized access into MetroPCS's protected computer networks cases damage by infiltrating and altering MetroPCS computer systems and by collecting and disseminating the illegally trafficked Handsets with the codes/passwords. Defendants' actions have substantially impaired the integrity of MetroPCS's systems.

200.    Defendants' activities violate the provisions of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

201.    Plaintiff has no adequate remedy at law.  If the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their protected computer network as well as their goodwill and reputation.  In addition, pursuant to statute, Plaintiff is entitled to an award of compensatory and punitive damages, attorneys' fees and costs, and investigation costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

WHEREFORE, Plaintiff respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of Plaintiff and against Defendants, as follows:

(a)  awarding Plaintiff its compensatory, consequential, statutory and special damages including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b)  awarding Plaintiff its reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiff and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiff its entire inventory of phones and products bearing or infringing the MetroPCS Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

Respectfully submitted this 19th day of January, 2017.

By: */s/ Stacey K. Sutton*
Stacey K. Sutton
New Jersey Bar No. 027361999
Email: ssutton@carltonfields.com
James B. Baldinger
Florida Bar No. 869899
*To be admitted pro hac vice*
Email:  jbaldinger@carltonfields.com
Alana Zorrilla-Gaston
Florida Bar No. 27256
Email: agaston@carltonfields.com
*To be admitted pro hac vice*
Kristin A. Gore
Florida Bar No. 59090
*To be admitted pro hac vice*
Email:  kgore@carltonfields.com
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
Phone: (561) 659-7070
Fax:  (561) 659-7368
*Attorneys for Plaintiff*

108724581.3